McBride, judge.
This suit, arising under the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix §§ 1881 et seq., is for treble damages for an alleged overcharge in rent. The allegations of the petition are that the plaintiff verbally leased the premises 2914 Josephine Street from defendant, who exacted a weekly rental of $10 between January 1, 1950, and April 29, 1950, notwithstanding that the ceiling rent was $13 per month. The petition calculates the total overcharge to 'be $128, and the prayer is for treble that amount, or $384, plus an attorney’s fee of $150. ■ There was judgment below in favor of defendant dismissing the suit, and plaintiff has appealed.
The testimony in the case is replete with contradictions and inconsistencies, and it is impossible to separate the wheat from the chaff. We will discuss but briefly some of the evidence.
While plaintiff alleged that her occupancy of the premises commenced on January 1, 1950, the tendency of the evidence is that she did not move into the premises until January 12, 1950.
Who originally rented the premises from Newton is a question in dispute. Plaintiff’s story is that she called upon defendant seeking to rent the place, and he informed her that he could not give his answer until after consultation with his wife ; defendant subsequently telephoned plaintiff, who sent one Clarence Boykins, her “common-law husband,” to Newton’s place with $10 to cover the first week’s rental, as that was the price which Newton made to her. On the other hand, Newton denies that he ever rented the premises to Frances Everette, and claims he dealt with Boykins, who represented himself to be plaintiff’s husband. Newton claims that the first payment of rent made by Boykins was in the sum of $12, the amount contracted for, and that he never at any time collected, more than $12 in any month.
*919 Boykins was never produced as a witness, for the good reason that during February he absconded to avoid falling into the hands of the police. At any rate, Frances Everette remained in the place thereafter, but no receipts were ever issued to her for any of her rent payments.
In her effort to prove that she paid $10 per week, plaintiff produced a witness named Berry, who testified that he visited her at the premises and on two occasions paid $10 to Newton for her account, which she told him was the amount of the rent. Berry’s testimony does not at all impress us, as he did not remember the dates of the payments, nor even could he say in what month or months they were made. Brown, who lived in the premises with plaintiff, testified that he occasionally gave her money for the rent, and that he knew she was paying $10 a week, although he never actually saw any rent payment made. Brown’s testimony may be discarded; he represented himself to be the brother of plaintiff, while the plaintiff swore that Brown was her uncle.
Newton’s wife testified that when Boy-kins rented the premises she saw him pay $12 cash to her husband on January 12, 1950. She also was present when he paid the following month’s rent, which was $12. She also witnessed a $12 payment for March.
Lucy Olezene, who appears to be the only disinterested witness, testifying for defendant, says that on January 12, 1950, she saw Boykins pay $12 to Newton for the first month’s rent.
Plaintiff was ultimately ejected from the property, but whether by legal process is something that is not shown by the record. However, incorporated in the transcript is a certified copy of a rule for possession filed by defendant against plaintiff in the First City Court of New Orleans on June 5, 1950, which alleges that plaintiff was occupying the premises under a verbal lease at a weekly rate of $8 in advance, and that six weeks’ rent was past due. The rule alleges that the rent was $8 per week, but the evidence pertaining to this circumstance is in such shape that we cannot make heads nor tails out of this feature of the case. Sometime during plaintiff’s occupancy it appears that the defendant proceeded to the Rent Control Office for the purpose of seeking to have the maximum rent increased to $8 a week, but the requested increase was refused by the Rent Director. Whether the rule was filed during the pend-ency of the application for the increase, and whether the fact that the application was pending had anything to do with the allegation of the rule as to the amount of the rent, we cannot say.
After considering a most unsatisfactory record, our conclusion is that the defendant’s evidence tips the scales in his favor. Plaintiff’s testimony that she paid $10 each week is uncorroborated, as neither Berry nor Brown is to be believed. On the other hand, the testimony of Olezene, the only witness appearing in the case who seems to be disinterested, in a measure corroborates the statements made by defendant. At any rate, no manifest error appears in the judgment, and as a decision is to rest upon a question of fact and the veracity of witnesses entirely, we must abide by the time-honored principle that the findings of fact by the trial judge should not be disturbed.
The judgment appealed from is affirmed.
Affirmed.